UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND R. LASHER, | CIVIL ACTION NO. 3:17-0914 |
| Plaintiff | |
| v. | (JUDGE MANNION) |
| STATOIL USA ONSHORE PROPERTIES INC., f/k/a STATOILHYDRO US ONSHORE PROPERTIES INC., | |
| Defendants | |

## MEMORANDUM

Pending before the court is the plaintiff's motion to remand. (Doc. 12). Based upon the court's review of the motion and the materials related thereto, the plaintiff's motion will be granted.

By way of relevant background, the plaintiff filed the instant action on May 4, 2017 in the Susquehanna County Court of Common Pleas. (Doc. 1, Ex. A). On May 23, 2017, the defendant removed the action to this court on the basis of original diversity jurisdiction under 28 U.S.C. §1332(a), arguing that there is complete diversity between the parties and that the amount in controversy exceeds $75,000 exclusive of interest and costs. (Doc. 1).

On June 20, 2017, the plaintiff filed the pending motion for remand, (Doc. 12), and filed a supporting brief on the following day, (Doc. 13). The

plaintiff does not challenge that there is complete diversity between the parties. However, the plaintiff argues that the defendant has failed to demonstrate that the relief he seeks satisfies the amount in controversy requirement when measured at the time of removal. The defendant filed a brief in opposition to the motion for remand on July 21, 2017. (Doc. 17). On August 18, 2017, the plaintiff filed a reply brief in support of his motion for remand. (Doc. 24).

Because federal district courts are courts of limited jurisdiction, the removal statutes are strictly construed against removal. e.g., American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951); Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.1992) (citations omitted); LaChemise Lacoste v. Alligator Co., 506 F.2d 339 (3d Cir.1974). If there are any doubts as to substantive and procedural jurisdictional prerequisites, they must be resolved in favor of remand. e.g., Abels v. State Farm Fire & Casualty Co., 770 F.2d 26, 29 (3d Cir.1985); Sterling Homes, Inc. v. Swope, 816 F.Supp. 319, 323 (M.D.Pa.1993). The removing defendant bears the heavy burden of persuading the court to which the state action was removed that it has jurisdiction under the removal statutes. Batoff, 977 F.2d at 851; Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085 (1991).

2

Removal is strictly a statutory right and the statutory procedures to effect removal must be followed precisely. Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir.1985). Removability is to be determined "only by reference to the plaintiff's initial pleadings," Swope, 816 F.Supp. at 323 (citations omitted), at the time of filing the petition for removal. Abels, 770 F.2d at 29.

Where the basis for removal is diversity of citizenship under 28 U.S.C. §1332, as in this case, "the congressional intent to restrict federal diversity jurisdiction [must be] honored." Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir.1999) (citations omitted). Further, where an action is removed on the basis of diversity, the requisite diversity of citizenship and jurisdictional amount ordinarily must appear on the face of the complaint or the removal petition. See Levy v. Weissman, 671 F.2d 766, 767 (3d Cir.1982). Although "actual damages may not be established until later in the litigation, the amount in controversy is measured as of the date of removal, a practice similar to that in original jurisdiction where the inquiry is directed to the time when the complaint is filed . . . When it appears to a legal certainty that plaintiff was never entitled to recover minimum amount set for §1332, the removed case must be remanded even if the jurisdictional deficiency becomes evident only after trial." Meritcare, 166 F.3d at 217.

Where the complaint does not seek damages in a precise monetary

3

amount, the district court may look to the notice of removal, and should make an independent evaluation of the claim from the record before it, i.e., the state court records starting with the complaint, and the removal notice. Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir.1993).

In this regard, the Third Circuit clarified the amount in controversy test in Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392 (3d Cir. 2004). Any factual disputes necessary to establish jurisdiction or the lack thereof must be resolved by the district court if the complaint and removal petition are insufficient to establish the amount with certainty. Id. It is the defendant's burden to demonstrate, by a preponderance of the evidence, facts upon which the district court may find that the amount meets or exceeds $75,000. Id. at 397-98. In attempting to establish its burden, estimations of the amounts recoverable [under the state claims pleaded] must be realistic. Id. at 403.

When the relevant facts are not in dispute or findings have been made by the district court, the Third Circuit recommended that the court "adhere to the legal certainty test" cited in Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3d Cir.1999), and established by the United States Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). In Red Cab, the Supreme Court discussed the nature of a defendant's burden of proof in a removal case and stated that "the rule for determining whether

4

the case involves the requisite amount as whether from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Samuel-Bassett, 357 F.3d at 397 (citing Red Cab, 303 U.S. at 289).

The plaintiff alleges that the instant action concerns the defendant's miscalculation of royalties it owes him on the sale of gas from his property pursuant to an oil and gas lease which covers a small parcel of approximately 36 acres of land in Susquehanna County, Pennsylvania. According to the plaintiff, the oil and gas lease requires the defendant to pay him royalties based on "sales proceeds actually received by [the defendant]" for actual sales of gas. The plaintiff alleges that the defendant breached the royalty payment term by transferring gas from the plaintiff's property to its affiliate Statoil Natural Gas LLC, ("SNG"), and by improperly calculating the royalties based on the price it assigns for bookkeeping for those transfers. In turn, the plaintiff alleges that SNG sells the gas to end users at significantly higher prices, with the profits flowing to the defendant's and SNG's parent, Statoil ASA, ("Statoil"). According to the plaintiff, the reduced royalty payments were part of a scheme to benefit the defendant's parent company at the plaintiff's expense.

The plaintiff's complaint further provides that the defendant has not charged deductions for post-production costs against the plaintiff's royalties and that an addendum to the lease contains a Market Enhancement Clause, ("MEC"), which prohibits deductions of post-production costs from royalty payments. While the plaintiff has received royalty payments, and while the defendant has not charged deductions for post-production services or transportation against those royalty payments, the plaintiff alleges that his royalty payments have been less than what he was entitled to because of the defendant's participation in the foregoing scheme to benefit its parent company.

Based upon his factual allegations, the plaintiff sets forth three counts in his complaint. The first count is for breach of contract based on the defendant's alleged breach of its obligation to calculate royalties based on sales proceeds actually received from sales of the gas to third parties, including end user markets. The plaintiff seeks actual damages in this count based on the difference between royalties calculated from the sales proceeds the defendant and SNG actually received from the sale of the gas to third parties and the allegedly artificial price the defendant used to calculate royalties paid to the plaintiff.

The second count of the plaintiff's complaint alleges breach of the

defendant's implied covenant to develop and operate the leasehold for the mutual benefit of the plaintiff and defendant and the implied duty to market. The plaintiff alleges that these implied duties require his royalties to be calculated on the actual proceeds of sales of the gas, including to end users in the premium markets that the defendant's parent, Statoil, touts to investors as the most lucrative part of its gas marketing chain in North America. The plaintiff alleges that the defendant's breaches of these covenants resulting from its participation in a scheme to benefit Statoil at the plaintiff's expense similarly gives rise to a claim for his actual damages, which is the difference between royalties calculated based on sales proceeds the defendant and SNG received from the sale of gas to third parties and the artificial sales proceeds the defendant used to calculate the royalties paid to the plaintiff.

In the final count of his complaint, the plaintiff seeks a declaratory judgment confirming that the lease requires royalty payments to be calculated based on the highest sales prices the defendant receives from third party end users, similar to the basis of damages in the breach of contract and breach of implied duties counts. The third count of the plaintiff's complaint also seeks a declaration that, although the defendant has not yet imposed deductions against the plaintiff's royalty payments for post-production costs, going forward, the lease does not permit the defendant to impose such deductions

7

that do not enhance the value of the gas beyond the value it ordinarily would have at downstream points of sale to third-party purchasers at those locations.

In its notice of removal, the defendant contends that it has conducted an analysis of the value of the plaintiff's claims and, according to its analysis, the difference between the royalty as calculated and the royalty calculated based on the gross receipts from an end user sale for the period from May 2015 until April 2017 is approximately $33,500[1]. As for the plaintiff's request for declaratory relief, the defendant's notice of removal provides that the total value of post-production costs incurred by it for the period from May 2015 until April 2017 attributable to the production under the plaintiff's lease is "in excess of $24,000". Moreover, in order to achieve an "end user" price, the defendant provides that it would have to incur additional "mainline transportation costs" to transport the production to an end user, which would

---

[1] In its notice of removal, the defendant asserted the amount of damages attributable to the plaintiff's breach of contract claim was "approximately $33,500." In its brief opposing the motion for remand, the defendant increased this amount to $35,000. Similarly, the defendant asserted in its notice of removal that the historic amount of post production costs was "in excess of $24,000", while it provides in opposing brief that the amount is $25,629.77. Again, with respect to historic mainline transportation costs, the defendant provided in its notice of removal that these were "approximately $20,800", but later provides that these costs were "$22,210.79". Since the court measures the amount in controversy as of the time of the filing of the notice of removal, the court will consider only those amounts presented in the notice.

have been "approximately $20,800" for the period from May 2015 until April 2017. To the extent that the plaintiff seeks a declaratory judgment that Statoil may not deduct these costs, the defendant argues that they must be added to the value of the plaintiff's case.

Because the mineral lease is currently under production and, according to the defendant, is expected to remain so for the foreseeable future, the defendant argues that the total value of the relief sought by the plaintiff will accrue at a commensurate rate going forward. As such, the defendant provides that the claims pled in the complaint present an amount in controversy in excess of $75,000, exclusive of costs and interest.

Assuming $33,500 as the amount of damages attributable to the plaintiff's breach of contract claim based upon the defendant's improper calculation of royalties, the plaintiff argues that the defendant falls short of the jurisdictional requirement. To this extent, the plaintiff argues that the defendant's inclusion of the amounts of foregone deductions for post production and transportation costs, $24,000 and $20,800 respectively, is improper because they are part of an unalleged counterclaim.[2] Even in cases

---

[2]The court notes that the defendant argues that the plaintiff's request for declaratory relief seeks to prohibit it from claiming post production costs and fees retroactively and going forward. In reading the plaintiff's complaint, he seeks "declaratory relief to prevent SOP from breaking contractual duties (continued...)

9

originally filed in federal court, pursuant to 28 U.S.C. §1332(b), the amount of setoffs and counterclaims is not considered in calculating the amount in controversy. "[T]he majority of the courts follow the rule the amount in controversy is determined by the plaintiff's complaint, stating that since the jurisdictional requirements apply to removed actions to the same extent as to original actions, no part of the required jurisdictional amount may be met by considering a defendant's counterclaim, whether permissive or compulsory." First Am. Mktg. Corp. v. United Integrity Grp., 2009 WL 2195319, at *2 (E.D. Pa. July 22, 2009) (citing Oliver v. Haas, 777 F.Supp. 1040, 1042 (3d Cir. 1991) (citations omitted)). See also Spectacor Mgmt. Grp. v. Brown, 131 F.3d 120, 126 (3d Cir. 1997) (observing majority view that value of counterclaims may not be considered in determining amount in controversy in removal context). Thus, the court will not consider the value of the historical post production and transportation costs which the defendant would attempt to recoup as part of a counterclaim.

Moreover, as to future post productions costs and transportation fees, the plaintiff argues that the defendant relies upon speculation to arrive at their value. As to the value assigned to the future post production costs and fees,

---

²(...continued)
going forward." (Emphasis added).

the defendant relies upon the declaration of Angela Paslay, a Certified Public Accountant. In calculating the future post production costs and transportation fees, Ms. Paslay relies upon "the historical average rates . . . multiplied by the projected royalty volume attributable to [the plaintiff's] royalty interest over the remaining economic life of each well." The remaining economic life of each well was, in turn, calculated by Tyler Bednar, a Senior Reservoir Engineer for Statoil. Admittedly, although he indicates that he uses industry standard software, a number of "estimates" and "assumptions" were used to determine the future economically recoverable natural gas reserves from the plaintiff's five wells and remaining life, which Mr. Bednar opines is 20 to 32 years[3], depending on the well. Although the software used may be standard industry practice to "estimate" future production and economically recoverable reserves of existing producing wells, the court finds that reliance on estimations and assumptions to come to the value of the future post production costs and transportation fees is too speculative for the defendant to meet its heavy burden of establishing that the plaintiff's claims belong in this court.

---

[3]Ms. Paslay indicates in her declaration that the terms of the plaintiff's contracts may not extend through the projected life of the five wells. However, she assumes that the contracts will either be extended or replaced with similar terms in order to provide for the continued production of natural gas from the wells.

Excluding the amounts for past and future post production costs and transportation fees for the reasons set forth above, the court finds that the defendant has not met its burden of establishing that the amount in controversy is sufficient to bring the plaintiff's case before this court. As such, the plaintiff's motion to remand will be granted and the matter remanded to the Susquehanna County Court of Common Pleas. An appropriate order shall issue.

MALACHY E. MANNION
United States District Judge

Date: March 27, 2018